UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL MAXSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14CV01360 AGF |
| ) | |
| CALDER BROTHERS CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff in this products liability action is a mechanic who was injured while "troubleshooting" an asphalt paver that was designed, manufactured, and sold by Defendant Calder Brothers Corp. The matter is now before the Court on Plaintiff's motion to exclude expert testimony and opinions of Bob Joynt, a mechanic with experience on pavers, retained by Defendant. For the reasons set forth below, this motion shall be denied as moot in part, and denied on the merits in remaining part.

## BACKGROUND

The complaint alleges that on December 16, 2009, Maxson's right foot fell into an opening between two metal foot rests on the subject paver machine and was caught in the machine's moving hydraulic auger. As a result, Plaintiff suffered serious and permanent injuries to his right foot and toes. Plaintiff asserted that the paver was defective and unreasonably dangerous at the time of its original design, manufacture, and sale by Defendants. He seeks damages under theories of strict liability and negligence. The record shows that the accident occurred while Plaintiff was "troubleshooting" the paver to determine why the hydraulic auger was not operating. While Plaintiff was manipulating

the wiring, a loose or broken wire made a connection and the auger kicked on. Plaintiff's foot was then caught and sucked into an augur. (Doc. No. 28 at 2.) Defendants filed an affirmative defense of comparative fault under Missouri law.

In Joynt's report dated April 28, 2015, Joynt opined, in relevant part, as follows:

> [T]he accident in this case was not caused by or resulted from any defective or unreasonably dangerous design of the asphalt paver manufactured by Calder Brothers. Rather, the accident was the result of Mr. Maxson's own fault in failing to provide maintenance on the paver in a manner anticipated by Calder Brothers, and consistent with reasonable maintenance practices in the industry . . . .
>
> \* \* \*
>
> . . . . Rather than taking steps to ensure that the auger would not be energized, he deliberately tried to start the auger while positioning himself at risk. Alternative and reasonably safe means were available to accomplish this task. For example, he could have used a volt meter or some other testing device to determine the location of the electrical problem before starting the engine; or positioned himself and/or the equipment so as to be in a safe position. He also could have operated the switches on the machine to ensure that the auger would not inadvertently start when he was positioned over it.

(Doc. No. 28-1)

The report states that Joynt's opinions were based upon his experience as a mechanic, and upon his review of a medical report, depositions taken in connection with the case, all exhibits to those depositions, and photographs of the subject paver and other pavers. *Id.*

In his deposition of June 11, 2015, Joynt testified that he had over 37 years of experience as either a mechanic or a supervising mechanic on road paving equipment, and extensive experience operating and fixing pavers like the one involved in this case. He explained that the report was prepared by Defendant's attorney and sent to him for

signature after conversations about Joynt's opinions. He testified at one point that the words in the report were his words "to the best of [his] recollection," (Doc. No. 31-1 at 11-12), but at another point he testified that "at least some of opinions in the report" were outside the area of his expertise, and that the report did not reflect his current opinions "in several ways." (Doc. No. 28-2 at 21.) In addition, Joynt could not recall whether he had read the medical report or depositions noted in his report. The record suggests that Joynt's report is identical to the reports of three other defense experts.

Joynt testified that he was not a design expert, and a review of his deposition testimony indicates that it was on design matters that he did not adopt the opinions in his report. But he testified that he did have expertise with respect to the operation and maintenance of pavers like the one involved in this case, and specifically, with the auger and electrical system of these machines. He opined that Plaintiff should have known not to try to access the electrical wires while both the electrical and hydraulic systems of the paver were operational. Joynt also offered alternative, safer ways Plaintiff could have tried to figure out why the augur was not working. On these matters, Joynt's testimony was consistent with his expert report and not equivocal.

Plaintiff suggests that Joynt's report is not reliable due to the method of its preparation and Joynt's testimony that it does not reflect his current opinions. In addition, Plaintiff seeks to exclude Joynt's testimony and opinions relating to "product design, occupational safety codes and regulations, lock-out tag-out procedures, human factors, warnings, and assignment of fault." Plaintiff argues that Joynt's qualifications and methodology do not meet the requirements for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In response, Defendant asserts that Joynt will not testify on any of these matters, except "fault" and "causation." This assertion moots a large portion of Plaintiff's motion now under consideration. What remains to be resolved is Plaintiff's request to exclude Joynt's opinions regarding fault and causation. Defendant states that Joynt will testify to the fault of Plaintiff in failing to "follow rudimentary safety precautions which would have prevented the accident in this case." In addition, Joynt will testify, as described in his report,

> to the basic safety procedures involved in repairing the auger, and how Plaintiff repaired the auger in a way that intentionally exposed him to the risk. Mr. Joynt will also discuss alternative reasonable ways that Plaintiff could have repaired the auger which would not have exposed him to the risk of the auger.

(Doc. No. 31 at 4-5.)

Plaintiff maintains that Joynt's opinions on these issues would not assist the jury, and were not based on any scientific methodology. Defendant argues that such testimony is proper for an expert, and that Joynt's qualifications on this matter are adequate. Defendant also argues that the method of preparation of Joynt's report was proper, and that any inconsistency between the report and Joynt's deposition testimony, and any similarity between Joynt's report and that of other defense experts, go to the weight of his opinions, not their inadmissibility.

## DISCUSSION

District courts are tasked with the gatekeeping function of determining whether to allow an expert to testify. *Daubert*, 509 U.S. at 592. Generally, expert testimony is admissible when it is reliable and will assist the trier of fact. Fed. R. Evid. 702.

> The objective of the Daubert inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. . . . The trial court has to decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case.

*Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722-23 (8th Cir. 2015)

The 1993 amendments to Federal Rule of Civil Procedure 26 added to the provision for identifying an expert witness, the requirement of a written report prepared and signed by the expert. Rule 26(a)(2)(B) sets exacting requirements for the report: it must contain a complete statement of all opinions to be expressed, the basis and reasons for those opinions, the "data or other information" considered by the expert and any supporting exhibits. Under Rule 37(c)(1), a court may exclude expert testimony which has not been adequately disclosed pursuant to these requirements.

The Advisory Committee notes to the 1993 amendment contemplate the assistance of counsel in preparing an expert's report, as follows:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Thus, generally, when an expert reads and signs a report prepared by counsel, the report is viewed as the expert's. *See Abernathy v. Union Pac. R.R. Co.*, No. 4:08CV04187-BRW, 2011 WL 1397439 (E.D. Ark. April 13, 2011); *Marek v. Moore*, 171 F.R.D. 298, 301 (D. Kan. 1997). And so here, the Court concludes that the method of preparation of Joynt's report is not a ground for

precluding him from testifying on his opinions, limited, of course, to those opinions included in his report that he is qualified to testify about.

The Court concludes that Joynt's deposition testimony disavowing some of the opinions expressed in the report does not apply to his opinions on the subject Defendants intend to offer him as an expert, namely, his opinions that Plaintiff did not take proper precautions in the manner in which he sought to find out why the auger wasn't working, and that there were alternative, safer ways to proceed. The Court understands Defendants' position to be that this is the only area on which they intend to use Joynt as an expert witness, and indeed, this is the only matter on which Joynt will be permitted to testify. This is a proper subject for expert testimony, and based on Joynt's deposition testimony, the Court concludes that he is a qualified expert, with the proper practical knowledge and experience, in this area. Testimony that the accident was not caused by or resulted from any defective or unreasonably defective design shall not be permitted by this witness.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to exclude the expert testimony and opinions of Bob Joynt is **DENIED as moot** in part, and **DENIED** on the merits in part, as set forth above. (Doc. No. 27.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 7th day of August, 2015.